Filed 11/30/21  P. v. Quihuiz CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H045671 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1349289) |
| v. | |
| GABRIEL EDWARD QUIHUIZ, | |
| Defendant and Appellant. | |

Defendant Gabriel Quihuiz shot and severely wounded an acquaintance who was visiting him at home.  He was charged with attempted murder.  Criminal proceedings were soon suspended, however, because mental illness left him unable to assist his counsel.  After treatment at a state hospital, which included psychiatric medication, defendant was restored to competency and the proceedings resumed.  Midway through trial, defense counsel informed the court defendant was not taking his medication and again seemed unable to assist in his defense.  But the court did not conduct a hearing regarding competency; trial continued and the jury convicted defendant of attempted premeditated murder.

Defendant contends the trial court erred by not conducting a hearing during trial to determine his competency.  Because California law and the United States Constitution require such a hearing whenever there is a reasonable doubt regarding a defendant's mental competency, we agree the failure to conduct one here was error.  We will therefore reverse the judgment and remand the matter for further proceedings:  a

competency hearing as necessary based on defendant's current mental condition, and a new trial if he is competent.

## I. BACKGROUND

Defendant, a retired carpenter, was 60 years old in 2013. A man he used to work with and had known for years made an unannounced visit to his home one January day in the late morning. The two drank beer and talked for several hours. Defendant suddenly pulled a revolver from his pocket and shot his visitor five times. He then called 911 to report he had just shot a man who was assaulting him.

Defendant was arrested and charged with premeditated attempted murder (Pen. Code, §§ 187, 664, subd. (a)) with a special allegation of firearm use (Pen. Code, § 12022.53, subds. (b), (c)). Before trial, the court suspended the proceedings to determine whether defendant was mentally competent to stand trial. Three doctors evaluated defendant; all opined he did not meet the standard for competency because his mental condition made him unable to rationally assist his attorney. Defendant was diagnosed with a paranoid personality disorder that made him delusional. He was "unable to control his thoughts, engage in verbal reasoning, or recall facts necessary to present a defense." Impaired thought processes prevented him from assisting counsel. Medication was recommended to treat his paranoid delusional belief system. Based on those reports, the trial court declared defendant incompetent to stand trial.

The court then conducted a hearing on whether defendant should be required to take anti-psychotic medication. A doctor testified that defendant very much needed the medication—without it he would likely become gravely disabled. Taking the medication, however, might restore his competency to stand trial. The court decided medication was essential to defendant's wellbeing but that he lacked capacity to decide whether to take it, and therefore ordered him to be involuntarily medicated. Defendant was committed to a state hospital for treatment.

2

During his time at the state hospital, defendant was administered several psychiatric medications. According to the state hospital's discharge assessment, when medications were temporarily discontinued, defendant initially remained "somewhat stable" but his symptoms, which included prominent delusions, "gradually increased and he became very unstable." Once he was back on medication, the delusions and associated symptoms "drastically improved." After about nine months, the hospital recommended defendant be returned to court because he was trial competent as long as he continued to take psychotropic medication. The staff doctor making the recommendation cautioned: "It is very important that Mr. Quihuiz continue to take his medications as previously stated. He deteriorates quite rapidly when off the psychiatric medications. … He must be maintained on antipsychotic medication and he must be seen regularly by a psychiatrist to ensure that his symptoms are adequately treated." The medical director of the hospital wrote in a letter to the court that defendant's competency certification was conditioned on taking the prescribed medications: "The above-named individual is being returned to court on psychotropic medication. It is important that the individual remain on this medication for his own personal benefit and to enable him to be certified under Section 1372 of the Penal Code."

The trial court found defendant had been returned to competency. Criminal proceedings resumed and a jury was impaneled. After trial began, defense counsel notified the court she had recently learned defendant was no longer taking his medication and she doubted his competency. Counsel stated that "based on the certification from Atascadero State Hospital that he is restored to competency, I believe it was contingent upon him remaining on his medications. So I believe there is a changed circumstance at this point. And that it is preventing him from receiving a fair trial in this case." The defense requested the trial be suspended, and that "hopefully we could get Mr. Quihuiz seen relatively quickly and [] at least get a verbal as to whether he is competent to proceed with a trial."

The court asked defendant whether he was taking his medication and he confirmed that he was not; indeed, he had not taken it for over a year (apparently since around the time of his discharge from the state hospital). The court asked counsel whether defendant had been assisting in his defense, and counsel responded that he was in some ways but she believed his illness was preventing him from making rational decisions about strategy. Specifically, defendant would not consent to introducing evidence of his mental health records even though counsel believed they were important to his defense.

Defendant took issue with a psychiatrist's characterization of an incident which defendant then described for the court:[1]

> "The incident occurred when – on Thanksgiving night an officer said that I crossed a white line coming on to the freeway. And he took me in back of the police station, put a gun to my head, put rope around my neck, threw a rope over the rafters, and several officers were ordered to kill me, to hang me from the rafters.
>
> I kicked the window out of the car. I kicked the door off the car. I was accused of being on PCP. The officers then confronted a witness and told them to mind their own business.
>
> Went to court. The Chief of Police threatened to kill my lawyer and myself. [Dr.] Molesworth wrote that the judge threatened to kill me. That was not the facts. The fact was that it was the Chief of Police that gave the order to kill me. It was the Chief of Police that gave the order to put Thorazine into my legs. It was the Chief of Police that ordered me to be killed in the back of the police station."

---

[1] Defendant offered the account during a closed hearing about whether to replace his appointed counsel; the transcript of that hearing was ordered sealed by the trial court. Because defendant quotes from the transcript in his briefing and relies on it to support his contentions on appeal, we infer defendant does not consider the transcript confidential and understand him to have waived any applicable confidentiality protections. (See *People v. Coddington* (2000) 23 Cal.4th 529, 617 fn. 38 [overruled on unrelated grounds by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1060].)

4

The trial court had described its view that, "I really see the issue between the two of you as being a difference in strategy. [¶]…[¶] In all other ways, I see that Mr. Quihuiz understands the purpose and the nature of the proceedings. [¶]…[¶] He's been able to assist you. I do see him also taking notes and passing notes to you and discussing things with you. So in that way, he is cooperating with his defense." The court ultimately ordered that trial proceed, finding no changed circumstances raising a reasonable doubt regarding defendant's competency.

Both defendant and the man he shot testified and provided differing accounts about what led to the shooting (which had been captured on video by defendant's home security camera). The man who was shot said he went to defendant's house because defendant had promised to take him fishing; when he arrived, defendant invited him in. They smoked marijuana and drank several beers before defendant, without warning, pulled a gun and shot him multiple times in the chest while saying, "die." Defendant testified he felt afraid when his acquaintance, who he believed had a violent past, showed up unannounced. He said the man behaved erratically and threatened him. He shot only because he thought he would otherwise be killed.

The jury convicted defendant of premeditated attempted murder and found true the firearm enhancement. The trial court sentenced defendant to 32 years to life in prison.

## II. DISCUSSION

Fundamental to an adversary system of justice is that the accused be mentally competent to understand the proceedings and able to rationally assist counsel. (*Drope v. Missouri* (1975) 420 U.S. 162, 171.) It therefore violates the due process clause of the federal constitution if a state does not observe procedures that protect the right of the accused to not be criminally tried while mentally incompetent. (*Ibid.*) In California, those procedures are contained in the Penal Code.

Penal Code section 1368 requires that if a doubt arises regarding a defendant's mental competency at any point before judgment, the court must conduct a hearing to

5

determine whether the defendant is mentally incompetent. "Mentally incompetent" means that because of a mental health disorder the defendant is either unable to understand the proceedings or unable to assist counsel in a rational manner. (Pen. Code, § 1367, subd. (a).) When competency is in question, the statutes specify the process the trial court must undertake, including the appointment of two psychiatrists or psychologists to examine the defendant and provide an opinion regarding trial competency. (Pen. Code, § 1369.)

Defendant contends the trial court erred by not conducting a full competency hearing when, during trial, his counsel informed the court that she doubted his competency because he was no longer taking his medication and was unable to assist in his defense. To decide whether the trial court erred, we review the record to determine whether there is substantial evidence of incompetence. (*People v. Panah* (2005) 35 Cal.4th 395, 432.) Where there is substantial evidence of incompetence—evidence that raises a reasonable doubt about the defendant's competence for trial—a full competency hearing is constitutionally required, and the trial court has no discretion to proceed otherwise. (*Ibid*.)

Applying that standard, we conclude the trial court erred by not conducting a competency hearing because the record contains evidence that raises a reasonable doubt regarding defendant's competence. Defendant had previously been found incompetent for trial by three doctors, all of whom opined that delusional thoughts made him unable to rationally assist counsel. Defendant was restored to competency through psychiatric medication and with the caveat that he must continue to take the medication to remain competent. The medical assessments stressed the importance of defendant taking the medication and noted he "deteriorates quite rapidly" otherwise. Given that context, the information that defendant had not been on the medication for over a year, coupled with his counsel's concerns about defendant's ability to rationally assist with his defense,

6

created a reasonable doubt about competence. The trial court was obligated to conduct a further competency hearing.

The trial court's colloquy with defense counsel and questioning of defendant did not resolve the doubt about competency. The court focused mainly on defendant's ability to understand what was happening and made a finding that he understood the purpose and the nature of the proceedings. But that was not the issue: no one had thought defendant unable to understand judicial proceedings; rather, he was previously found incompetent because *despite* a demonstrated ability to understand the trial process, delusional thinking left him unable to rationally assist counsel. The trial court also expressed its belief that defendant was assisting his defense because he could be seen "passing notes" and "discussing things" with counsel, and counsel's concern that defendant was irrationally preventing an effective trial strategy by refusing to allow his mental health records into evidence was merely a strategic disagreement between attorney and client. That observation, too, is beside the point. The question that needed to be answered through a competency hearing was whether the disagreement was the product of rational thought, or of defendant's mental illness. If it was defendant's previously diagnosed delusional thought process that was causing him to obstruct his counsel's recommended strategy, then he was not competent for trial.

The California Supreme Court has provided guidance regarding this very situation. *People v. Rodas* (2018) 6 Cal.5th 219, 223, held that generally, "once a defendant has been found competent to stand trial, a trial court may rely on that finding absent a substantial change of circumstances. But when a formerly incompetent defendant has been restored to competence solely or primarily through administration of medication, evidence that the defendant is no longer taking [the] medication and is again exhibiting signs of incompetence will generally establish such a change in circumstances and will call for additional, formal investigation before trial may proceed." This case is

7

functionally indistinguishable from *Rodas*, compelling the conclusion that a further competency hearing was required here.

The Attorney General argues *Rodas* does not control because although defendant had been returned to competency through medication that he was no longer taking, he was not exhibiting any significant signs of incompetence. But in fact he was. Defense counsel reported that defendant again seemed unable to assist with his defense because he was obstructing the introduction of important evidence. And when questioned by the court defendant showed other signs suggesting delusional behavior. Defendant flatly denied ever being diagnosed with any kind of mental illness. He said he was being wrongfully incarcerated based on "124 lies," and he recounted an incident in which the chief of police threatened him, ordered that he be hanged from the rafters in the police station, and injected him with Thorazine. It is possible defendant was not experiencing delusional thoughts and, despite not taking medication deemed essential to his mental health, he remained competent for trial. But for purposes of our review, sufficient doubt was raised here to compel a statutory competency hearing.

We acknowledge the difficulty presented to a trial judge when asked to conduct a competency hearing during trial with a jury seated. But fundamental due process considerations cannot be subordinated to convenience. (See *Drope v. Missouri*, *supra*, 420 U.S. 162, 181 [that conducting a competency hearing might abort a trial is a "hard reality"].) A hearing is necessary whenever a reasonable doubt regarding competency arises before judgment, whether trial has started or not. Indeed, the statutory procedure expressly contemplates a competency hearing during trial and directs that the jury should not be discharged while the process is ongoing, absent undue hardship. (Pen. Code, § 1368, subd. (c).)

Having concluded the trial court erred by not conducting a formal competency hearing, we must decide the appropriate disposition for this appeal—a conditional reversal for a retrospective competency hearing that would allow the judgment to be

8

reinstated upon a finding that defendant was competent at the time of trial; or a reversal and remand for a new trial if defendant is currently competent. The California Supreme Court has not yet determined whether a conditional remand for a retrospective competency hearing can ever be an adequate remedy for the denial of a required hearing before judgment. (*People v. Rodas*, *supra*, 6 Cal.5th 219, 241.) But the Court has indicated a retrospective competency determination is not appropriate when the defendant's symptoms are fluctuating, significant time has passed, and there are no contemporaneous expert evaluations. (*Id.* at p. 240.) In *Rodas*, those circumstances made a reliable retrospective competency determination unrealistic: Given that Rodas "had long since stopped taking his medication and had suffered a significant relapse into a more florid psychotic condition, it is difficult to see how a psychologist or psychiatrist appointed to make a retrospective evaluation could reliably find defendant was nonetheless competent at the time of trial. Under the particular circumstances of this case, at a distance of around five years and without any expert evaluations from the time of trial, we do not believe the trial court could fairly come to a reliable conclusion that defendant was competent at that time." (*Id.* at p. 241.)

The same difficulties are present here. Defendant stopped taking his medication over a year before trial and there are no contemporaneous expert assessments of how that affected his competency. An accurate retrospective competency determination several years after the fact is not feasible. We will therefore reverse the judgment and remand the matter for the trial court to conduct such further proceedings as are allowable given defendant's current mental condition. Given that disposition, we do not reach defendant's contentions regarding instructional error and prosecutorial misconduct in closing argument. As to defendant's arguments regarding retroactive application of Penal Code section 1001.36, we note that this case is not yet final, and on remand the trial court may grant mental health diversion if it determines defendant is eligible. (*People v. Frahs* (2020) 9 Cal.5th 618, 640.)

### III. DISPOSITION

The judgment is reversed and the case remanded for further proceedings. Defendant may be retried if he is mentally competent to stand trial. If there is a reasonable doubt regarding defendant's current competency, the trial court must conduct a competency hearing under the procedures set forth in Penal Code sections 1368 and 1369.

_____

Grover, J.

**WE CONCUR:**


_____

Greenwood, P. J.


_____

Bamattre-Manoukian, J.


**H045671 –** *The People v Quihuiz*